731 N.E.2d 12 (2000)
TIPTON COUNTY, Indiana, acting by and through its several officers and bodies, to-wit, the TIPTON COUNTY COUNCIL, collectively and by its individual elected members; the Board of Commissioners, collectively and by its individual elected members of the Tipton County Auditor, as that office has been and currently and hereafter will be filled by an elected officer, Appellant-Defendant,
v.
STATE of Indiana on the relation of Dane P. NASH, Appellee-Plaintiff.
No. 48A02-9912-CV-810.
Court of Appeals of Indiana.
June 21, 2000.
*14 Stephen R. Buschmann, Buschmann Carr & Shanks, Indianapolis, Indiana, Attorney for Appellant.
Theodore F. Smith, Jr., Smith & Todd, Anderson, Indiana, Attorney for Appellee.

OPINION
SHARPNACK, Chief Judge
Tipton County appeals the trial court's grant of partial summary judgment in favor of Judge Dane P. Nash, who is acting as a relator on behalf of the State. The county raises one issue, which we restate as whether the trial court erred when it determined that Tipton County violated the Indiana Constitution by ending its voluntary supplemental wage payments to Judge Nash. Judge Nash raises one issue on cross-appeal, which we restate as whether the trial court erred when it determined that Judge Nash is not entitled to liquidated damages and attorney fees. We affirm in part and reverse in part.
The relevant facts follow. On January 1, 1991, Judge Nash began serving a six-year term of office as a circuit court judge in Tipton County. As a circuit court judge, Judge Nash's salary was paid in part by the State and in part by Tipton County from 1991 until July 1995. Furthermore, from 1991 until July 1995, the county voluntarily paid Judge Nash a supplemental wage in addition to its state-mandated salary obligations. On May 5, 1995, the General Assembly enacted, and the Governor signed into law, an act that amended the judicial pay statute. Broadly speaking, the amendments provided, inter alia, that counties were no longer required to pay a salary to their trial judges because the State was assuming sole responsibility for their salaries. However, if counties chose to continue providing voluntary supplemental wages to their trial judges, the counties could not pay them more than $5,000 per year. The amendments took effect on July 1, 1995.
In September 1994, Tipton County budgeted $4,400 for voluntary supplemental wages to be paid to Judge Nash in 1995. At the time that the amendments to the judicial pay statute took effect on July 1, 1995, the county had already paid him $2,219.89 in supplemental wages for the year. After the amendments took effect, Tipton County stopped paying voluntary supplemental wages to Judge Nash. He did not receive any supplemental payments from July 1, 1995, through all of 1996.
*15 On September 25, 1998, Judge Nash filed a petition for writ of mandamus and damages against Tipton County in which he sought to compel Tipton County to pay him the unpaid supplemental wages. He also sought liquidated damages and attorneys' fees. Thereafter, the county filed a motion for summary judgment, and Judge Nash filed a motion for partial summary judgment on the question of the payment of wages. The trial court granted Judge Nash's motion and ordered the county to pay him $6,600 for the supplemental wages. In addition, the trial court granted Tipton County's motion in part and denied Judge Nash's claims for liquidated damages and attorneys' fees.

I.
The issue raised by Tipton County is whether the trial court erred when it determined that Tipton County violated the Indiana Constitution by ending its voluntary supplemental payments to Judge Nash. The county claims that if Judge Nash's state wages and county supplemental wages are considered together, then his overall pay has actually increased rather than decreased, even though the county has stopped paying voluntary supplemental wages to Judge Nash, and therefore no constitutional violation has occurred. Judge Nash replies that the state wages and county supplemental payments must be considered separate sources of income. Consequently, he concludes that the county's failure to pay him any supplemental wages from July 1, 1995, to December 31, 1996, violates the Indiana Constitution because the county decreased his salary while he was in office.
Initially, we note our standard of review. When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court. See Ayres v. Indian Heights Volunteer Fire Dep't, Inc., 493 N.E.2d 1229, 1234 (Ind.1986); see Ind. Trial Rule 56. The appellant bears the burden of proving that the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. Rosi v. Business Furniture Corp., 615 N.E.2d 431, 434 (Ind.1993). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmovant. Cowe v. Forum Group, Inc., 575 N.E.2d 630, 633 (Ind.1991). A genuine issue of material fact exists where facts concerning an issue, which would dispose of the litigation, are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. Scott v. Bodor, Inc., 571 N.E.2d 313, 318 (Ind.Ct.App.1991). We will affirm the grant of summary judgment if it is sustainable on any theory or basis found in the record. Pyle v. National Wine & Spirits Corp., 637 N.E.2d 1298, 1299 (Ind. Ct.App.1994).
The governing state constitutional provision in dispute is article VII, § 19, which provides: "The Justices of Supreme Court and Judges of the Court of Appeals and of the Circuit Courts shall at stated times receive a compensation which shall not be diminished during their continuance in office." IND. CONST. art. VII, § 19. Judges are officers of the state, and the General Assembly establishes the salaries and benefits of judges. See Board of Trustees of Pub. Employees' Retirement Fund v. Hill, 472 N.E.2d 204, 209 (Ind. 1985), reh'g denied. The legislature may delegate its authority to establish judicial salaries to county governments, but without such a delegation of its authority, only the legislature may raise or lower judicial salaries. See Mance v. Board of Dir. of Pub. Employees' Retirement Fund, 652 N.E.2d 532, 537 (Ind.Ct.App.1995), reh'g denied, trans. denied.
In order to determine whether Tipton County violated art. VII, § 19, we must decide whether the state wages and county supplemental wages should be considered one source of income or two separate salaries. Therefore, we must refer to *16 the statutes that govern judicial salaries. Before we do so, a review of our relevant rules of statutory construction is necessary. We independently determine as a matter of law a statute's meaning and apply it to the facts of the case at bar. Skrzypczak v. State Farm Mut. Auto. Ins. Co., 668 N.E.2d 291, 295 (Ind.Ct.App. 1996). Our foremost objective in construing a statute is to determine and give effect to the intent of the legislature. Walling v. Appel Serv. Co., 641 N.E.2d 647, 651 (Ind.Ct.App.1994). It is presumed that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. Id. We may not interpret a statute that is facially clear and unambiguous. See Skrzypczak, 668 N.E.2d at 295. Rather, we give the statute its plain and clear meaning. Id.
The current version of the leading statute provides, in relevant part, "The total annual salary of each full-time judge of a circuit, superior, municipal, county or probate court is ninety thousand dollars ($90,000) and any additional salary provided under IC XX-X-X-XX or IC 36-3-6-3(c)." Ind.Code § 33-13-12-7.1(a) (emphasis added). Thus, the plain and clear language of the statute provides that state wages and county supplemental wages are linked aspects of a single salary, not two separate incomes. Id.
The legislative history of the judicial pay statutes supports this plain reading. Prior to the 1995 statutory amendments, counties were required to contribute to their trial judges' salaries. Ind.Code § 33-13-12-7 (repealed by Act of May 5, 1995, P.L. 280-1995, § 25, 1995 Ind. Acts 4082, 4101). In addition, the other judicial pay statutes provided that counties were permitted to pay unlimited amounts of supplemental wages to their judges. Ind.Code §§ 36-2-5-14 (1980) (amended 1995); 36-3-6-3(c) (1980) (amended 1986, 1995). This system created problems. As the Indiana Commission on Courts noted in 1994, the "alternative compensation structure for Indiana judges has created significant disparities in the compensation of trial court judges throughout Indiana." Record, p. 134. The disparity in judicial pay caused by the county supplemental wages violated the legislature's intent because, as our supreme court has noted, "[t]here has been a legislative intent manifest throughout legislation providing for pay and benefits for judges, to treat working judges in a uniform manner." Hill, 472 N.E.2d at 207. Consequently, the 1995 amendments to the judicial pay statutes eliminated the requirement that counties contribute to judicial salaries, but it also provided that counties could pay their judges no more than $5,000 per year in supplemental wages. See Act of May 5, 1995, P.L. 280-1995, §§ 6, 23-24, 1995 Ind. Acts 4084-485, 4100-4101. Therefore, the legislative history of the judicial pay statutes reflects a legislative intent to closely regulate county payments to trial judges and regulate such payments as part of the trial judges' salaries, not as an entirely separate source of income.
Although it does not directly address art. VII, § 19, the Olszewski case is instructive on this issue. Olszewski v. Stodola, 226 Ind. 639, 82 N.E.2d 256 (Ind. 1948). In Olszewski, Lake County had been paying its trial judges $5,800 in county supplemental pay when the legislature enacted a new statute that raised the State's share of the trial judges' salary from $4,200 to $4,800 and limited the trial judges' maximum salary to $10,000. Id. at 642, 82 N.E.2d at 257. Because Lake County's supplemental payments in combination with the state pay would have raised the Lake County judges' salaries above the $10,000 limit, Lake County filed suit to determine whether it was still required to pay the excess supplemental salary. Id. at 641, 82 N.E.2d at 256-257. Our supreme court determined that the legislature had clearly expressed its wishes when it placed the $10,000 total pay limit upon both state pay and county supplemental pay together, and as a result Lake *17 County was barred from paying the full supplemental amount that it had previously provided to its trial judges. See id. at 644-645, 82 N.E.2d at 258. Olszewski provides guidance in the instant case because in Olszewski, the General Assembly demonstrated an intent to treat state pay and county supplemental pay as a single salary. See id. at 644-645, 82 N.E.2d at 258. Furthermore, the judicial pay statutes in both cases also demonstrate that the legislature intends to regulate state and county pay as a cohesive whole. See I.C. §§ 36-2-5-14, 36-3-6-3(c); Olszewski, 226 Ind. at 644-645, 82 N.E.2d at 258.
Judge Nash asserts that the other subsections of Ind.Code § 33-13-12-7.1 provide evidence of a legislative intent to treat state pay and county supplemental wages as separate salaries. He concludes that the only way to harmoniously interpret Ind.Code § 33-13-12-7.1(a) with the rest of the statute is to address the state pay and county supplemental pay as separate salaries in all circumstances.
We must give effect and meaning to every word of a statute, if possible, and no part should be held meaningless if it can be reconciled with the rest of the statute. Olejniczak v. Town of Kouts, 651 N.E.2d 1197, 1199 (Ind.Ct.App.1995), trans. denied. Furthermore, we agree with Judge Nash that statutes relating to the same general subject matter are in pari materia and should be construed together. Irving Materials, Inc. v. Board of Comm'rs, 683 N.E.2d 260, 262 (Ind.Ct. App.1997), trans. denied, 698 N.E.2d 1183. However, a review of the other subsections of Ind.Code § 33-13-12-7.1 does not contradict the legislature's plain statement in Ind.Code § 33-13-12-7.1(a) that salary consists of state wages and county supplemental wages.
Turning to Ind.Code § 33-13-12-7.1(c), that subsection provides that the counties that choose to pay supplemental wages to their trial judges must also pay their share of Social Security and Medicare taxes. I.C. § 33-13-12-7.1(c). This subsection is a bookkeeping provision that ensures that the federal government receives the proper amount of Social Security and Medicare taxes for each trial judge, regardless of the source of income. Id. Ind.Code § 33-13-12-7.1(c) also ensures that counties do not impinge upon State fiscal sovereignty, as discussed in Mance. Mance, 652 N.E.2d at 537. In that case, we determined that the state was not required to consider county supplemental pay when it calculated trial judges' retirement benefits. Id. at 537. If the state were required to do so, then counties could gain a measure of influence over state fiscal expenditures by raising their supplemental payments. Id. In the context of Social Security and Medicare taxes, Ind. Code § 33-13-12-7.1(c) avoids fiscal sovereignty issues by requiring counties to "pay their own way" for Social Security and Medicare taxes.
In the instant case we are confronted with the mere payment of wages, which in no way impinges upon the state's fiscal prerogatives. Regardless of how much counties choose to pay to their trial judges, the state's payment of wages to trial judges is unaffected. Therefore, the concerns addressed in Ind.Code § 33-13-12-7.1(c) and Mance are not raised here and do not compel a conclusion that State pay and county supplemental pay should be considered separate in all circumstances.[1]
Turning to Ind.Code § 33-13-12-7.1(d), a plain reading of that provision does not conflict with Ind.Code § 33-13-12-7.1(a). Ind.Code § 33-13-12-7.1(d) provides, in relevant part: "For purposes *18 of determining the amount of life insurance premiums to be paid by a judge ... the judge's salary does not include any amounts paid to the state by a county under subsection (a)." It is a well-recognized rule of statutory construction that, where a restriction is not general but is provided in a specific instance, application of the specific instance will not be carried into other statements that do not provide such limitations. Indiana Family & Soc. Serv. Admin. v. Methodist Hosp. of Indiana, Inc., 669 N.E.2d 186, 190 (Ind.Ct. App.1996). Therefore, the county payment exclusion contained in subsection (d) should not be read into subsection (a), because subsection (d) applies only when the state calculates the judges' life insurance premiums. See id.
Judge Nash also notes that when the General Assembly amended the judicial pay statute in 1995, it placed a $5,000 cap upon the amount of supplemental pay that counties may give to their trial judges. See Ind.Code §§ 36-2-5-14, 36-3-6-3. He contends that the fact that the legislature put the cap in separate statutes instead of including it in Ind.Code § 33-13-12-7.1(a) is evidence of a legislative intent to separate state pay from county voluntary supplemental pay. We disagree.
Ind.Code § 36-2-5-14 provides:
"(a) This chapter does not affect the salaries of judges, officers of courts, prosecuting attorneys, and deputy prosecuting attorneys whose minimum salaries are fixed by statute, but the county fiscal body may make appropriations to pay them more than the minimums fixed by statute subject to subsection (b).
(b) Beginning July 1, 1995, an appropriation made under this section may not exceed five thousand dollars ($5,000) for each judge or full-time prosecuting attorney in any calendar year."
I.C. § 36-2-5-14. Ind.Code § 36-3-6-3, provides, in relevant part:
"(a) A legislative body shall, by ordinance or resolution, fix the annual compensation of all appointed officers, deputies, and employees under its jurisdiction.
* * * * *
(c) This chapter does not affect the salaries of judges, officers of courts, prosecuting attorneys, and deputy prosecuting attorneys whose minimum salaries are fixed by statute, but the city-county legislative body may make appropriations to pay them more than the minimums fixed by statute. Beginning July 1, 1995, an appropriation made under this subsection may not exceed five thousand dollars ($5,000) for each judge or full-time prosecuting attorney in any calendar year."
I.C. § 36-3-6-3.
Neither Ind.Code § 36-2-5-14 nor Ind. Code § 36-3-6-3 contradict the plain language of Ind.Code § 33-13-12-7.1, because both statutes state that they do "not affect the salaries of judges ... whose minimum salaries are fixed by statute." I.C. §§ 36-2-5-14, 36-3-6-3. Ind.Code § 33-13-12-7.1 establishes that trial judges' salaries consist of state wages and county supplemental wages, and Ind.Code §§ 36-2-5-4 and 36-3-6-3 merely establish the upper limits of the supplemental wages. Indeed, when the three statutes are read together, it is evident that the legislature has created a regulatory framework in which state pay and county supplemental pay are not treated separately but are regulated as one unified salary. This interpretation is consistent with the legislature's intent that trial judge's salaries should be treated in a uniform manner. See Hill, 472 N.E.2d at 207. Consequently, the plain language of Ind.Code § 33-13-12-7.19(a) is uncontradicted, and we hold that state pay and county supplemental pay should be considered one salary for the purposes of Article 7, § 19 of the Indiana Constitution.
In this case, when Judge Nash's state wages and county supplemental wages are *19 considered together, it is indisputable that his salary increased, not decreased:

Year Statutory Voluntary County Total Annual
 Salary Supplemental Wages Compensation
1991 $61,740.00 $3,824.00 $65,564.00
1992 $61,740.00 $4,034.00 $65,774.00
1993 $61,740.00 $4,214.00 $65,954.00
1994 $61,740.00 $4,214.00 $65,954.00
1995 $73,465.59[2] $2,219.89 $75,685.48
1996 $85,000.00 - 0 - $85,000.00

Record, pp. 26, 40. Consequently, Tipton County did not violate art. VII, § 19, of the state constitution when it stopped paying supplemental wages to Judge Nash. See I.C. § 33-13-12-7.1(a). As a result, Judge Nash was not entitled to summary judgment as a matter of law, and we must reverse the judgment of the trial court on this issue.

II.
The issue raised by Judge Nash on cross-appeal is whether the trial court erred when it granted partial summary judgment in favor of Tipton County on Judge Nash's claims for liquidated damages and attorney fees. The trial court granted Tipton County's motion on grounds that Judge Nash's claims for liquidated damages and attorneys' fees were barred by the statute of limitations. Judge Nash asserts that the trial court applied the incorrect statute of limitations and that his claims are not time-barred. We need not address this issue on the merits, however, because we have held that Tipton County did not unconstitutionally reduce Judge Nash's pay during his term in office. See supra Part I. If Judge Nash's underlying claim is without merit, then his claims for liquidated damages and attorneys' fees must also fail. Consequently, we affirm the trial court's entry of partial summary judgment in favor of Tipton County.
For the foregoing reasons, we reverse the trial court's grant of partial summary judgment in favor of Judge Nash and affirm the trial court's grant of partial summary judgment in favor of Tipton County. We remand with instructions to the trial court to enter summary judgment for Tipton County.
Affirmed in part and reversed in part.
KIRSCH, J., concurs.
RILEY, J., dissents in part and concurs in part with separate opinion.
RILEY, Judge, dissenting in part and concurring in part.
I respectfully dissent as to Issue I and concur in result on Issue II.

Issue I
In January 1991, Judge Nash began serving his second six year term as Circuit Court Judge of Tipton County, Indiana. During this term, Judge Nash received compensation from both Tipton County and the State. When Judge Nash began his term, his compensation was governed by Ind.Code § 33-13-12-7(a).[3] This statute provided that full-time circuit court judges be paid an annual salary of $61,740 during the calendar year 1991 and thereafter. The source of payment for this salary was $56,780 from the State general fund and $4,960 from Tipton County. Also, under Ind.Code § 36-2-5-14, counties were allowed to make appropriations for the payment of judges in addition to the total set by State statute. Accordingly, during Judge Nash's second term, Tipton County made certain appropriations to add to his annual salary set by Ind.Code § 33-13-12-7(a). For each year of Judge Nash's term, except for 1996, this additional appropriation or voluntary county supplement was increased.
Effective July 1, 1995, Ind.Code § 33-13-12-7(a) and Ind.Code § 36-2-5-14 were amended. The 1995 amendment to *20 Ind.Code § 33-13-12-7(a) provided for a total annual salary for fulltime circuit court judges of $85,000 to be paid by the State, plus any additional salary provided under Ind.Code § 36-2-5-14 and Ind.Code § 36-3-6-3(c). The amendment to Ind. Code § 36-2-5-14 provided that although counties were allowed to make additional appropriations for the payment of judges in excess of the minimum set by state statute, this additional voluntary appropriation was not to exceed $5,000 for each judge. In response to the changes in these statutes, Tipton County decided not to pay Judge Nash the remaining amount appropriated for the second half of 1995, approximately $2,200, and further, decided not to appropriate any additional sum for 1996.
Thus, even though Judge Nash received compensation from the State pursuant to Ind.Code § 33-13-12-7 and received compensation from the county pursuant to Ind. Code § 36-2-5-14, the majority concludes that the compensation from these two sources constitute only one income. In deciding whether these statutes should be interpreted to constitute one income or two separate incomes, the trial court found:
A plain reading of the 1995 judges' pay raise statute [Ind.Code § 33-13-12-7(a) ], along with the amended county supplement statute [Ind.Code § 36-2-5-14], indicates that the legislature intended to keep separate the concept of State pay from County supplemental pay. This is evidenced by the continued existence of two difference (sic) statutes, the detailing by the Indiana legislature of not combining the applicable social security taxes and medicare taxes between State and County and, finally, by not allowing the County supplement to affect the State life insurance premiums of judges with regard to its calculation. Replete throughout the 1995 judges' pay raise statute are references to the existence of the voluntary county supplement.
(R. 223).
I agree with the trial court. Additionally, case law has recognized that the voluntary supplement paid by the county is additional compensation separate from what is paid by the State. See Loos, 416 N.E.2d at 875 and Mance, 652 N.E.2d at 537. Also, there are other indicators that Judge Nash received separate compensation from the State and county. First, as discussed, there are two separate statutes, one setting the State salary minimum for circuit court judges, and one allowing the county to pay an additional supplement in addition to the amount already received from the State. Further, the county supplement is not considered part of the Judge's salary in determining retirement benefits and for calculating State life insurance premiums. See Mance, 652 N.E.2d at 537; and Ind.Code § 33-13-121-7(d). Additionally, counties are required to pay their share of Social Security and Medicare taxes when they pay supplemental wages to the trial judges. Ind. Code § 33-13-12-7.1(c). All of these factors lead to the conclusion that Judge Nash received separate compensation from the State and county.
The majority relies in part on this court's decision in Olszewski, 226 Ind. 639, 82 N.E.2d 256. However, Olszewski does not concern whether a reduction in county supplemental pay to trial judges during their term in office is constitutional under Art. VII, § 19 of the Indiana Constitution. In Olszewski, the issue was whether Lake County would be required to pay a county supplement that would result in Lake County judges receiving total pay from the State and county in excess of the total salary limit set by State statute. Id. at 641-642, 82 N.E.2d at 257. Here, even if Tipton County continued to pay Judge Nash the voluntary county supplement it had previously paid, there was no concern that Judge Nash would receive income in excess of $90,000, which at that time was *21 the total maximum amount a trial judge was allowed to receive annually under State statute.[4]
The majority concludes that the legislative history of the 1995 amendments to the judicial pay statutes demonstrate an intent to create one unified salary for trial judges. However, as the majority notes, the 1995 amendment to the judicial pay statutes were intended to end large disparities in judicial pay between counties by limiting the amount paid by the counties to $5,000. However, that does not mean that the legislature intended to create one salary. Instead, it is clear that these statutes allow judges to receive separate compensation from two sources, the State and the county, and provide for maximum amounts to be received from each.
Because I would conclude that the pay received by Judge Nash from the county is separate compensation than the pay he receives from the State, I would further conclude that Tipton County's reduction of Judge Nash's compensation during his term violated Article 7, § 19 of the Indiana Constitution. As set forth in the majority's opinion, this provision prohibits a reduction in a circuit court judge's compensation while in office. The purpose of this provision "is to preserve the independence of the working judiciary in such a clear and unmistakable manner as to entirely rule out conflict and argument on the point." Board of Trustees of the Public Employees' Retirement Fund v. Hill, 472 N.E.2d 204, 209 (Ind.1985). By reducing the compensation paid to Judge Nash during his term of office in violation of Article 7, § 19 of the Indiana Constitution, Tipton County was allowed to interfere with the independence of the working judiciary. Thus, as to this Issue I, I would affirm the trial court's grant of partial summary judgment in favor of Judge Nash.

Issue II
I concur in result with regard to Issue II; however, since the majority did not reach the merits of this issue, it is necessary to explain the basis for my concurrence.
Issue II concerns Judge Nash's assertion on cross-appeal that the trial court improperly granted Tipton County's Motion for Summary Judgment with regard to his claim for damages and attorney fees under Ind.Code § 22-2-5-2. The trial court concluded that even though Judge Nash's claim for unpaid compensation was brought under Ind.Code § 34-1-2-1(2),[5] which has a five (5) year statute of limitations, his claim for liquidated damages and attorney fees was brought under Ind.Code § 22-2-5-2, which is governed by a two (2) year statute of limitations. Ind.Code § 22-2-5-2 provides for the award of liquidated damages up to double the amount of wages owed plus attorney fees when an employer has failed to pay wages. Although Ind.Code § 22-2-5-2 does not have a self-contained statute of limitations, the trial court reasoned that Ind.Code § 22-2-5-2 is penal in nature because it authorizes damages greater than those actually incurred, and because of the statute's penal nature, it is governed by a two (2) year statute of limitation. When a statute requires an award of damages in an amount greater than those actually incurred, the statute is penal in nature. Browning v. Walters, 616 N.E.2d 1040, 1045 (Ind.Ct. App.1993). Consequently, I would agree with the trial court that Ind.Code § 22-2-5-2 is penal in nature because it requires the payment of liquidated damages and attorney fees.
Further, actions claiming a forfeiture of a penalty provided by statute are governed by Ind.Code § 34-11-2-4. Ind.Code § 34-11-2-4 provides that: "An action for:
*22 (1) injury to person or character, (2) injury to personal property; or (3) a forfeiture of penalty given by statute; must be commenced within two (2) years after the cause of action accrues." Since a claim based on Ind.Code § 22-2-5-2 is an action claiming a forfeiture of a penalty provided by statute, claims brought under Ind.Code § 22-2-5-2 must be commenced within two (2) years after the cause of action accrues, pursuant to Ind.Code § 34-11-2-4.
Judge Nash filed his Petition for Writ of Mandamus on September 25, 1998. On August 15, 1995, the Tipton County Council voted not to pay Judge Nash the last half of the 1995 county supplement previously appropriated for him and on September 6, 1995, the Council voted not to pay him the voluntary county supplement for 1996. Thus, his claim for the 1995 supplement accrued on August 15, 1995, and his claim for the 1996 supplement accrued on September 6, 1995, and consequently, Judge Nash was required to file his claim for liquidated damages and attorney fees relating to the 1995 county supplement by August 15, 1997, and his claim for liquidated damages and attorney fees relating to the 1996 county supplement by September 6, 1997. However, because Judge Nash did not file this cause of action until September 25, 1998, his claim for liquidated damages and attorney fees under Ind.Code § 22-2-5-2 would be time barred.
NOTES
[1] Loos, another case cited by Judge Nash, is also distinguishable from the instant dispute. Loos v. Long, 416 N.E.2d 874 (Ind.Ct.App. 1981). In Loos, we were called upon to interpret the statute that governs prosecuting attorneys' salaries, a statute that is dissimilar to Ind.Code § 33-13-12-7.1(a). See id. at 874-875; Ind.Code § 33-14-7-5 (establishing prosecutors' salaries).
[2] Based on a pro rata calculation of a statutory salary of $61,740 from January 1, 1995, to June 30, 1995, and a statutory salary of $85,000 from July 1, 1995 to December 31, 1995, pursuant to the judicial pay raise granted by P.L. 279. See Act of May 5, 1995, P.L. 279-1995, § 6(a), 1995 Ind. Acts 4062, 4065.
[3] Now Ind.Code § 33-13-12-7.1(a).
[4] $85,000 total annual salary from the State per Ind.Code § 33-13-12-7(a) and $5,000 maximum annual voluntary county supplement per Ind.Code § 36-2-5-14.
[5] Now Ind.Code § 34-11-2-6.