INDIANA DEPARTMENT OF NATURAL RESOURCES and Indiana Natural Resources Commission, Appellants–Respondents,

v.

UNITED REFUSE COMPANY, INC., Appellee–Petitioner,

Indiana Division, Izaak Walton League of America, Inc.,[1] Intervening Respondent.

No. 49S02–9306–CV–619.

Supreme Court of Indiana.

June 9, 1993.

1. The Indiana Division of the Izaak Walton League of America, Inc., is not participating in this appeal.

Pamela Carter, Atty. Gen. of Indiana and Mathew S. Scherschel, Deputy Atty. Gen., Indianapolis, for appellants-respondents Indiana Dept. of Natural Resources and Indiana Natural Resources Com'n.

George M. Plews, Sue A. Shadley, and Donn H. Wray, Plews & Shadley, Indianapolis, for appellee-petitioner United Refuse Co., Inc.

**ON PETITION TO TRANSFER**

KRAHULIK, Judge.

United Refuse Company, Inc. ("United") seeks transfer after the Court of Appeals reversed the trial court's judgment vacating the order of the Natural Resources Commission ("NRC"), a subdivision of the Indiana Department of Natural Resources.[2] *Indiana Dep't. of Natural Resources v. United Refuse Co.* (1992), Ind.App., 598 N.E.2d 603. The NRC's order denied United's request for a floodway construction permit.

### *FACTS*

United operates a sanitary landfill in Allen County, Indiana, on an approximately 100 acre tract of land which it owns. The property is bounded by Junk Ditch on the north and west, the Norfolk and Western Railroad on the south, and Smith Road on the east. Power lines divide the property into two sections, a southern section ("South Property") and a northern section ("North Property"). The South Property, roughly seventy acres, is presently used by

---

2. The NRC is the subdivision of the Indiana Department of Natural Resources with the authority to issue floodway construction permits.

· Because it is the NRC which acted on behalf of the DNR, we will refer to the two of them collectively as NRC.

United in its landfill activities. The roughly thirty acres of North Property, however, is not presently used for landfill activities.

In the 1970's, United received approval from the NRC to conduct landfill operations on the South Property, but the NRC disapproved of landfill activities being conducted on the North Property. In 1985, United submitted another application to the NRC to construct an earthen dike on the North Property in a floodway and expand its landfill operations to the North Property. The NRC denied the application.

United filed a petition for administrative review. Following a hearing, the administrative law judge ("ALJ") issued a report, proposed findings of fact, and a recommended order. Objections to the report were timely filed. After hearing oral argument on the objections, the NRC affirmed the ALJ's order and adopted without change the order as the final NRC order.

United sought judicial review of the final NRC order in the trial court. After a hearing, the trial court issued findings of fact, conclusions of law and judgment. In reversing and vacating the NRC order, the trial court determined that the ALJ failed to serve as the trier of fact because, in assessing the NRC's initial determination, the ALJ improperly used a standard of appellate review. Additionally, the trial court determined that the NRC lacked jurisdiction over United's property because the area involved did not meet the statutory definition of "floodway."

The NRC raised four issues in its appeal to the Court of Appeals. The NRC claimed that the trial court exceeded its authority by issuing factual findings which conflicted with those issued by the NRC, that United had failed to carry its burden of proof, and that the NRC's findings and conclusions were supported by substantial evidence. The Court of Appeals reversed the trial court and affirmed the NRC's order in its entirety. In reaching its conclusion, the Court of Appeals held that (1) United failed to meet its burden of proof, (2) the order was supported by substantial evidence, (3)

United was not deprived of due process, and (4) that the findings were sufficient to determine that the North Property was within a "floodway."

In its petition to transfer, United challenges the NRC's jurisdiction over the North Property and asserts that the ALJ did not conduct a *de novo* hearing of the evidence, but rather improperly used a standard of appellate review in the administrative hearing. We grant transfer to address these issues.[3]

### *JURISDICTION*

■ United asserts that in order for the NRC to have jurisdiction over the North Property, the property must meet the statutory requirements of being within a "floodway." The legislature has defined "floodway" as "the channel of a river or stream, and those portions of the flood plains adjoining the channel, which are reasonably required to efficiently carry and discharge the flood water or flood flow of any river or stream." *Ind. Code Ann.* § 13–2–22–3(12) (West 1990). United asserts that the NRC lacks jurisdiction because the North Property is not necessary for the efficient carry and discharge of water. The NRC asserts that the North Property meets the statutory definition of "floodway" and, therefore, jurisdiction is proper. Additionally, the NRC states it is improper for an appellate court to reweigh the evidence.

We have considered the arguments on this issue and conclude that the Court of Appeals correctly decided it. Therefore, pursuant to Indiana Appellate Rule 11(B)(3), we adopt and incorporate by reference the Court of Appeals' opinion as follows:

United also argues that the NRC's characterization of the North Property as a "storage floodway" is dispositive of this issue because unless the property at issue is located in a "floodway," the NRC has no jurisdiction to grant United a construction permit. We note that United

---

**3.** Although United raises several other issues in its petition, we find it unnecessary to address them due to our resolution regarding *de novo* review.

correctly asserts that the controlling statute uses only the terms "floodway" and "flood plain," and not "storage floodway." *See Ind.Code* §§ 13–2–22–3(11) and (12). Here, however, the ALJ did not find that the North Property was a "storage floodway," but rather found that according to the 100–year flood criterion, the water level would rise up and over the edge of the flood basin and water would then run down in the opposite direction; this finding is sufficient to show that the North Property is a floodway, and that this floodway is required to "carry and discharge" the flood flow efficiently. *See Ind.Code* § 13–2–22–3(12); *Ind.Code* § 13–2–22–13(d); Record at 774–75.[7]

---

[7] Moreover, as the NRC points out, the statute uses the term "any floodway," so even the NRC's loose usage of the term "storage floodway" does not prevent it from having jurisdiction over the North Property. *See* Reply Brief at 4–5; *Ind.Code* § 13–2–22–13(d). [Footnote included as part of the opinion.]

Therefore, the NRC had jurisdiction to require United to obtain a permit for construction on the North Property, and United's contentions to the contrary are simply requests for us to reweigh the evidence, which we may not do. *See [Hamilton Co. Dept. of Pub. Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 167–68]. Any extra findings which the ALJ made which were irrelevant to the resolution of this issue were mere surplusage, which do not affect the validity of his decision. *Cf. [Hardesty v. Bolerjack* (1982), Ind.App., 440 N.E.2d 490, 493] (findings required to be sufficiently detailed to allow for meaningful judicial review).

*United Refuse Co.,* 598 N.E.2d at 607.

### STANDARD OF REVIEW

■ United asserts that the ALJ did not conduct a *de novo* review of the evidence presented at the administrative hearing, but rather erroneously used a standard of appellate review. Additionally, United asserts that the ALJ did not make his findings of fact exclusively from the evidence presented. In contrast, the NRC contends that the proper standard of administrative

review was provided. The NRC asserts that the ALJ's findings of fact indicate that the ALJ did make his recommendation based on the evidence presented at the hearing, that the findings are sufficient to support the NRC's ultimate decision, and despite the ALJ's confusion regarding the fine points of his role, that the findings are in accord with the evidence presented at the hearing.

■ An aggrieved party at an administrative hearing may seek judicial review. *Ind.Code Ann.* §§ 4–21.5–5–1 through 4–21.5–5–16 (West 1991). It is not, however, an unlimited review. The legislature provided that a

court shall grant relief under section 15 of this chapter only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

*Ind.Code* § 4–21.5–5–14(d). A court, in reviewing an administrative decision, is limited to determining "whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principle." *Board of Tax Comm'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 921. The trial court proceeding is not intended to be a trial *de novo,* but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Ind.Code* § 4–21.5–5–11; *Board of Trustees of the Pub. Employees' Retirement Fund of Ind. v. Miller* (1988), Ind., 519 N.E.2d 732, 733. Consequently, a trial court acts as an appellate court when it reviews an administrative order.

■ Although the trial court acts as an appellate court, this does not mean that a party's rights are not adjudicated. Rath-

er than the trial court acting as fact finder, the role of fact finder rests with the ALJ. *Ind. Code* § 4–21.5–3–27(b). In some agencies, as here, the ALJ is not the ultimate authority but instead makes proposed findings and a recommended order to the agency's ultimate authority. This, however, does not relieve the ALJ from the obligation to serve as trier of fact in the administrative hearing. *Ind. Code* § 4–21.5–3–27(a). In short, the ALJ performs a duty similar to that of a trial judge sitting without a jury.

■ The ALJ is guided in his role by *Ind. Code* §§ 4–21.5–3–1 through 4–21.5–3–37 which establish the procedure the ALJ is to follow. More particularly, *Ind. Code* § 4–21.5–3–27 requires the ALJ to make findings of fact based on the evidence presented *at the hearing*. This requires the ALJ to independently weigh the evidence presented at the hearing and to base recommendations exclusively on that record. But here, as noted by the Court of Appeals, "the ALJ appeared confused regarding his function in the administrative proceeding." 598 N.E.2d at 606. An examination of the ALJ's findings reveals that the ALJ deferred to the agency's initial determination by applying a reasonableness standard instead of hearing the evidence as if for the first time. For example, the following is a sampling of the ALJ's findings which illustrate the improper use of a standard of appellate review by the ALJ:

12. The following issues are relevant and will be addressed in this document:

\* \* \* \* \* \*

(b) Was there basis for the Commission's denial of the Claimant's permit application that would lead a reasonable and honest person to the same conclusion?[1]

---

1 This test was used to define an arbitrary and capricious act by an administrative agency in *State Board of Tax Commissioners v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723, and will be sometimes referred to as "rational basis" throughout this text. [Footnote included as part of the finding.]

51. The key considerations in all these statutory elements are: What did the Commission read and hear in regard to this permit application and did this information provide a rational basis for an individual commission member to form the opinion that United Refuse had not proved its case?

\* \* \* \* \* \*

56. The issue here is not whether Mr. Pruitt is right or wrong but rather was his testimony to the Commission convincing enough to create a rational basis by which an individual commission member could form an opinion as to whether unreasonable detrimental effects upon fish, wildlife or botanical resources could occur.

These findings illustrate that the ALJ failed to fulfill his duty as fact finder because, instead of weighing the evidence and reaching a conclusion, he deferred to the agency's initial determination.

■ Because the ALJ did not perform a *de novo* hearing, the administrative proceeding was not in accord with the procedure required by law. As a result, pursuant to *Ind. Code* § 4–21.5–5–14 and § 4–21.5–5–15, we hold that where an ALJ does not conduct a *de novo* hearing of the evidence presented at an administrative hearing, the aggrieved party is entitled to a new hearing before an ALJ.

### CONCLUSION

Accordingly, we grant transfer and vacate the opinion of the Court of Appeals except as to the issue adopted and incorporated by reference. We affirm the trial court's determination that the ALJ did not perform a *de novo* review, but reverse the trial court's determination that the Natural Resources Commission lacked jurisdiction. We remand this case to the NRC for a *de novo* hearing by an administrative law judge.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs, with separate opinion in which DICKSON, J., concurs.

DeBRULER, Judge, concurring.

Several important propositions are inextricably bound to this case which deserve special mention.

First, special findings by administrative tribunals serve important and salutory goals, including: (1) restraining agency discretion to lawful channels; (2) advising the person dealing with the agency of the grounds for denying governmental license or benefit; and (3) facilitating court review, avoiding encroachment by the courts upon legitimate agency action. *See Carlton v. Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N.E.2d 337. I am in accord with the oversight of the process provided in the majority opinion.

Second, the administrative law judge, in this instance, was not the ultimate authority. Therefore, his findings and order issued pursuant to Ind.Code § 4–21.5–3–27 were tentative and not final or binding upon the Natural Resources Commission (NRC), the ultimate authority. United Refuse Company, Inc. ("United Refuse") filed objections pursuant to I.C. § 4–21.5–3–29, in part objecting to the review standard employed by the administrative law judge. Pursuant to I.C. § 4–21.5–3–28, the NRC then conducted a third administrative proceeding and affirmed the decision to deny the permit, thereby incorporating the findings of the administrative law judge by reference. It is this order, and not the tentative findings and order of the ALJ, that constitutes the final agency action subject to judicial review in this case.

Pursuant to I.C. § 4–21.5–3–28(g)(2), the NRC was authorized in this third administrative proceeding to reject or modify the findings of the administrative law judge, and make its own findings "meeting the standards of section 27." Accordingly, the error in applying an appellate review standard, identified in the majority opinion, is that of the NRC and not the administrative law judge. Upon such error of the NRC, I too would order the final agency action set aside.

Third, the statute provides the standard to be applied by the administrative law judge and the NRC in administrative review proceedings as follows:

(b) The order must include, separately stated, findings of fact for all aspects of the order, .... Findings of ultimate fact must be accompanied by a concise statement of the underlying basic facts of record to support the findings....

(c) Findings must be based exclusively upon the evidence of record in the proceeding and on matters officially noticed in that proceeding. Findings must be based upon the kind of evidence that is substantial and reliable. The administrative law judge's experience, technical competence, and specialized knowledge may be used in evaluating evidence.

I.C. § 4–21.5–3–27(b) and (c). This standard makes the distinction between "ultimate facts" and "basic facts of record." I would consider the differences between such facts to be that the one is general and more abstract, and the other is more specific and particular. The standard also calls for deference to be granted the findings. When the findings are those of the NRC, I regard such deference to be due from the courts when affording judicial review.

Fourth, it is important that courts view administrative findings as distinct from judicial findings. Administrative findings are often made by persons without a legal background. If the requirements for administrative findings becomes too formal or too restraining, legitimate administrative action may be frustrated.

Fifth, it is useful to observe that the tentative findings of the administrative law judge are against the party having the burden of proof in the hearing before him. When the findings of a tribunal are against the party having the burden of proof, as they are in this case, special problems in expression are presented. They only need be sufficient to communicate the basis for the negative decision. Some of the problem here stems from this source.

Finally, it is important that United Refuse has made no claim that the plenary adjudicatory hearing, conducted by the administrative law judge, was in any way

defective. United Refuse was granted a full and fair opportunity to present its case for issuance of the permit. Since the integrity of the hearing and the record of the hearing stand unimpinged, a proper alternative to the remand chosen in the majority opinion would be to remand the case to the trial court to order the final agency action set aside, and the correct standard applied by the NRC without reopening the hearing for further evidence.

DICKSON, J., concurs.