INDIANA CIVIL RIGHTS COMMISSION
and Judy Ann Ledbetter, Appellants–
Respondents,

v.

The SALVATION ARMY ADULT
REHABILITATION CENTER,
Appellee–Petitioner.

No. 45A03–9609–CV–321.

Court of Appeals of Indiana.

Sept. 25, 1997.

Frederick S. Bremer, ICRC Staff Counsel, Indianapolis, for Appellants–Respondents.

Kathleen M. Maicher, Spangler, Jennings & Dougherty, P.C., Merrillville, for Appellee–Petitioner.

## OPINION

STATON, Judge.

The Indiana Civil Rights Commission and Judy Ann Ledbetter (collectively "ICRC") appeal the trial court's determination that the Salvation Army Adult Rehabilitation Center (SAARC) is not an "employer" within the Indiana Civil Rights Law;[1] therefore, the ICRC is without jurisdiction over the SAARC. The sole issue presented for our review is whether the ICRC has jurisdiction over the SAARC.

We affirm.

---

1. Ind.Code § 22–9–1–1 *et seq.*

The facts relevant to this appeal are not in dispute.[2] The Salvation Army is a distinct Christian denomination. An officer in the Salvation Army is a person who has received a divine call from God. Being commissioned as an officer in the Salvation Army is the equivalent to ordination. The ultimate goal of the Salvation Army is to lead people to a proper relationship with God. To this end, the Salvation Army preaches the gospel, disseminates Christian beliefs, and supplies basic human necessities. Additionally, it provides spiritual and moral counseling as well as physical rehabilitation to persons in need. The Salvation Army has established numerous programs including: religious services; youth and adult activities; alcohol and drug rehabilitation; missing persons services; community centers; emergency and disaster relief; and various other social and religious services.

As part of its religious and social services, the Salvation Army established the SAARC. The SAARC is an in-residence program designed to assist men in need: men who often suffer from alcoholism, drug addiction or various other social disorders. The SAARC is a Christian oriented program which includes bible study, spiritual counseling and group therapy. As to more worldly needs, the SAARC provides a clean, safe residence, food, and work therapy for men in need. In the Salvation Army, the SAARC is not simply a demonstration of good will derived from religious motivations. The SAARC is not social or secular in purpose. Rather, the SAARC is considered a sacrament and central to the religious mission of the Salvation Army.

As noted above, residents of the SAARC are required to engage in "work therapy." As part of work therapy, the SAARC established a thrift store where the men process donated materials such as furniture, appliances and clothing. These items are then sold to the public. The proceeds are used to support the SAARC and its programs. Ledbetter worked in one of the thrift stores and contends her termination from employment there was the result of religious and gender discrimination. The trial court found that the Indiana Civil Rights Law did not apply to the SAARC since the SAARC is excluded from the definition of "employer" under both *IND.CODE* § 22–9–1–3(h)(1) and *IND.CODE* § 22–9–1–3(h)(2).

■ A court reviewing an administrative decision is limited to determining whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory, or legal principles. *Ind. Dep't of Natural Resources v. United Refuse Co.*, 615 N.E.2d 100, 103 (Ind.1993). The trial court proceeding is not intended to be a trial de novo but an analysis of the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Natural Resources Comm'n v. Sugar Creek Mobile Estates*, 646 N.E.2d 61, 64 (Ind.Ct.App.1995), *reh. denied, trans. denied.* Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence and judging the credibility of witnesses and must accept the facts as found by the administrative body. *Id.* However, courts owe no degree of deference to an agency's conclusions of law as law is the exclusive province of the judiciary. *Ashlin Transp. Svcs., Inc. v. Indiana Unemployment Ins. Bd.*, 637 N.E.2d 162 (Ind.Ct.App.1994). When the facts are not in dispute and the question is whether the facts support a particular legal conclusion, courts need not defer to agency decision making. *Id.*

■ It is unlawful for an employer to discriminate against its employees on the basis of religion or gender. *IND.CODE* § 22–9–1–3(*l*). Excluded from the definition of "employer" is "any school, educational, or charitable religious institution owned or conducted by or affiliated with a church or religious institution." IC 22–9–1–3(h)(2). Case law holds, and the parties agree, that the Salvation Army is a religious institution. *Hull v. State*, 120 Ind. 153, 22 N.E. 117 (1889). *See*

---

**2.** The ICRC devotes the majority of its statement of facts to the merits of Ledbetter's discrimination claim. The merits of Ledbetter's discrimination claim are not relevant to this appeal.

*also Salvation Army v. N.J. Dept. of Comm. Affairs,* 919 F.2d 183 (3d Cir.1990); *McClure v. Salvation Army,* 323 F.Supp. 1100 (N.D.Ga.1971), *aff'd,* 460 F.2d 553 (5th Cir. 1972), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972); *Bennett v. City of LaGrange,* 153 Ga. 428, 112 S.E. 482 (1922). Too, the ICRC agrees that the SAARC is an institution owned and operated by the Salvation Army. (Brief of Appellants at 20).

Notwithstanding these admissions, the ICRC contends that the SAARC is not entitled to the protection of IC 22–9–1–3(h)(2) by virtue of the fact that it operates a thrift store. According to the ICRC, the operation of a thrift store is a commercial enterprise and IC 22–9–1–3(h)(2) is inapplicable once there is a mix of commercial activities with religious and charitable activities, even if the religious and charitable activities predominate. The ICRC continues that the SAARC assumed the identity of a commercial enterprise thereby removing its exempt status. We disagree.

■ A review of IC 22–9–1–3(h) reveals no express requirement that a religious institution refrain from engaging in a commercial activity to sustain its religious undertakings in order to obtain the benefits of that section. The ICRC asks us to graft such a requirement onto IC 22–9–1–3(h)(2). However, when a statute is clear and unambiguous on its face, this court need not, and indeed may not, interpret the statute differently. Instead, we must adhere to the statute's clear and plain meaning. *Rzeszutek v. Beck,* 649 N.E.2d 673, 677 (Ind.Ct.App.1995), *trans. denied.* Under a clear and plain reading of IC 22–9–1–3(h)(2), the SAARC is not an employ-

er. The SAARC is a charitable religious institution which is owned by and affiliated with the Salvation Army, a religious institution. This is all the section requires.

We also note that it would not be consistent with the legislature's intent to conclude that the SAARC is an employer since it runs a thrift store. It is clear the legislature intended to remove from liability under the Indiana Civil Rights Law charitable and religious institutions. Bake sales, raffles, bingo and other fund-raising activities are not uncommon events sponsored by charities in order to sustain their missions. This is precisely what the SAARC has done through its thrift store. All the proceeds from the thrift store go to funding the SAARC and its programs. The ICRC would have us conclude that the only way a religious institution could remain exempt under IC 22–9–1–3(h)(2) would be if its sole fund-raising activity consisted of gathering cash donations. We do not believe the legislature intended IC 22–9–1–h(3) to apply only to charities or religious institutions which limited their fund-raising activities in such a manner.

Affirmed.[3]

GARRARD, J., concurs.

BARTEAU, J., concurs in result.

---

**3.** The ICRC also argues that the trial court erred by concluding that the SAARC was not an employer under IC 22–9–1–3(h)(1). Since we con- clude that the SAARC is immune from liability under IC 22–9–1–3(h)(2), we do not reach this issue.